## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43107

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 14** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  February 14, 2017** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **GREGORY WAYNE POWELL,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Fred M. Gibler, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction, <u>vacated</u>.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Gregory Wayne Powell appeals from his judgment of conviction for lewd conduct with a minor under sixteen.  Specifically, he argues the district court erred in denying Powell's motion to suppress evidence obtained during his parole hearing.  For the reasons set forth below, we reverse the district court's order denying Powell's motion to suppress and vacate his judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Powell was charged with two counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508.  Each charge was based upon Powell's conduct with two different victims.  As part of a plea agreement, Powell pled guilty to one count and the State

dismissed the other count. Powell was sentenced to a unified sixteen-year sentence, with seven years determinate.

In 2013, Powell was nearing completion of the determinate portion of his sentence and was being considered for parole. As part of the parole process, Powell participated in a prehearing interview with a parole hearing officer. During this interview, the hearing officer asked Powell numerous questions regarding his social and criminal history. Included in this line of questioning were inquiries into whether Powell previously committed any other uncharged sexual offenses. At no time did the hearing officer promise that Powell would not be prosecuted for any incriminating responses. The hearing officer did, however, instruct Powell that if he did not answer the questions truthfully, he would be denied parole. Powell admitted to the hearing officer to having engaged in lewd conduct with two additional victims--conduct for which he had not been convicted.[1] The hearing officer then reported the additional victims to local law enforcement.

Powell then appeared before the Idaho Commission of Pardons and Parole Board for a parole hearing. During that hearing, Powell again admitted to having engaged in lewd conduct with two additional victims. The parole board granted Powell a tentative parole date conditioned upon his successful completion of several classes.

Four months after Powell's parole hearing, law enforcement officers interviewed Powell about his incriminating admission. Officers read Powell *Miranda*[2] warnings prior to questioning, and Powell again admitted to sexually molesting two additional victims. Based upon the statements made to the parole hearing officer, the parole board and the law enforcement officers, the State charged Powell with two additional counts of lewd conduct with a minor under sixteen. Powell filed a motion to suppress evidence of the statements he made during the prehearing interview and parole board hearing on the grounds they were obtained in violation of his Fifth Amendment right against self-incrimination. The district court denied the motion, finding the State did not compel Powell to make the self-incriminating statements. Instead, the court found that Powell voluntarily disclosed the information out of his desire to be paroled.

---

[1] Although not convicted, the State had already charged Powell in 2007 for his conduct with one of those victims. The State dismissed the charge pursuant to the plea agreement underlying Powell's original conviction.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Powell entered a conditional guilty plea to one count of lewd conduct with a minor, reserving the right to appeal the denial of his motion to suppress. In exchange, the State dismissed the second count of lewd conduct. Powell timely appeals the district court's denial of his motion to suppress.

## II.

## ANALYSIS

Powell maintains that the district court erred in denying his motion to suppress incriminating statements he made during a prehearing interview and parole board hearing. He argues these statements were taken in violation of his Fifth Amendment right against compelled self-incrimination. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." This privilege applies to the states through the Fourteenth Amendment. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-86 (1998). It is well-accepted that the protections of the Fifth Amendment extend beyond the context of a criminal trial, granting an individual the right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). These protections are not lost by conviction or incarceration--the United States Supreme Court has specifically held that an individual does not lose the Fifth Amendment's protections merely because he or she made incriminating statements while incarcerated or on probation. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). An individual protected by the privilege may rightfully refuse to answer unless and until the individual is granted immunity against future use of the compelled answers in a subsequent criminal proceeding. *Id.* Absent such immunity, if the individual is nevertheless compelled to answer, the answers "are inadmissible in a subsequent trial for a crime other than that for which he has been convicted." *Id.*

3

Despite the fact that Powell was incarcerated at the time of the statements and that he disclosed the incriminating information as part of the parole process, the Fifth Amendment protections were still available to him. However, Powell never affirmatively asserted his Fifth Amendment privilege or refused to answer questions. Instead, he fully and honestly answered the questions put to him during the parole process.

Ordinarily, to be afforded the protections of the Fifth Amendment, a defendant must affirmatively invoke the privilege. *United States v. Monia*, 317 U.S. 424, 427 (1943); *State v. Crowe*, 131 Idaho 109, 112, 952 P.2d 1245, 1248 (1998). This duty to claim the privilege remains with the individual even when the government is unquestionably attempting to compel a response. *Garner v. United States*, 424 U.S. 648, 654 (1976). "[I]f a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Id.* Thus, if the individual being questioned does not assert the privilege and instead voluntarily responds without protest, the responses are ordinarily not considered to have been compelled within the meaning of the Fifth Amendment. *Murphy*, 465 U.S. at 427-28.

However, an individual's failure to affirmatively assert his or her Fifth Amendment privilege does not necessarily preclude its benefit. *See Garner*, 424 U.S. at 656-57. The United States Supreme Court has previously held that a defendant's failure to affirmatively invoke Fifth Amendment protections may be excused in situations where that individual is denied a "free choice to admit, deny, or refuse to answer." *Id.* at 656-57. The Court has recognized that such coercion occurs where the very assertion of the privilege is penalized so as to "foreclose a free choice to remain silent." *Murphy*, 465 U.S. at 437. Such circumstances are commonly referred to as a "classic penalty situation." *Id.* at 436. To constitute a penalty situation, the individual must be faced with the government's assertion, either expressly or impliedly, that invocation of the Fifth Amendment will lead to a substantial penalty. *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977).

Powell argues that his failure to affirmatively invoke the Fifth Amendment should be excused because he was faced with a classic penalty situation. Not only were Powell's self-incriminating statements used against him in a subsequent criminal prosecution, but he argues that the State compelled him to make these self-incriminating disclosures by threatening to deny his request for parole if he remained silent. The State does not contest the factual basis for

4

Powell's allegations. Instead, the State argues that because Powell was under no obligation to seek parole, his voluntary participation in the parole process, including his incriminating responses, could not have been compelled for Fifth Amendment purposes. Thus, the State's argument suggests that we need not address whether Powell faced a classic penalty situation due to his voluntary act of seeking the benefit of parole and his failure to invoke the privilege.

The State relies on the United States Supreme Court case *Woodard* to support its assertion that an individual cannot be compelled to self-incriminate by voluntarily participating in optional proceedings. In *Woodard*, a death row inmate was offered a voluntary interview as part of the state's statutorily mandated clemency process. *Woodard*, 523 U.S. at 276-77. The Court recognized that Woodard faced a difficult choice between providing information in a voluntary clemency interview that risked damaging his case for clemency or post-conviction relief or of remaining silent and having the clemency board draw an adverse inference from his silence. *Id.* at 288. Woodard declined to participate in the interview, asserting his Fifth Amendment right. *Id.* at 285. The Court nonetheless concluded that "this pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled" within the meaning of the Fifth Amendment. *Id.* at 288.

A significant distinction between *Woodard* and Powell's case is that in *Woodard*, the clemency hearing was statutorily mandated, and the issue of clemency eligibility would be decided with or without Woodard's participation. Conversely, before Powell could be deemed eligible for parole, he was required to participate fully in the process. Not only was Woodard's participation not required, but his nonparticipation did not foreclose his eligibility to receive clemency. Instead, his refusal to participate merely allowed the parole board to draw an adverse inference from his silence. Conversely, Powell was informed that failing to participate would foreclose his eligibility for parole. Thus, the fact that Powell voluntarily participated in the parole process does not foreclose the possibility that he was compelled to self-incriminate for purposes of the Fifth Amendment.

We therefore turn to the critical issue of this case: whether the circumstances of Powell's case constituted a classic penalty situation such that his failure to affirmatively invoke the privilege is excusable. To constitute a penalty situation, Powell must have been threatened that invoking his Fifth Amendment right to silence would be met with a substantial penalty such that

he was deprived of the ability to voluntarily invoke the privilege. *See Cunningham*, 431 U.S. at 806. He contends being denied parole constituted that substantial penalty.

Neither the United States Supreme Court nor Idaho courts have specifically decided whether the threat of denied parole is a sufficiently compelling penalty to implicate the classic penalty situation exception to the invocation requirement of the Fifth Amendment. The cases in which the United States Supreme Court has applied the classic penalty exception have involved situations where "the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Murphy*, 465 U.S. at 434 (quoting *Cunningham*, 431 U.S. at 806). In these "penalty" cases, the Court has focused its inquiry into the severity of the penalty in deciding whether an individual was unconstitutionally compelled. *See McKune v. Lile*, 536 U.S. 24, 49 (2002) (O'Connor, J., concurring) ("some penalties are so great as to 'compel[l]' such [self-incriminating] testimony, while others do not rise to that level"). Penalties the Court has deemed severe enough to offend the Fifth Amendment have included termination of employment, *Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of the City of New York*, 392 U.S. 280 (1968) and *Garrity v. New Jersey*, 385 U.S. 493 (1967); loss of a professional license, *Spevack v. Klein*, 385 U.S. 511 (1967); ineligibility to receive government contracts, *Turley*, 414 U.S. 70; and loss of the right to participate in political associations and to hold public office, *Cunningham*, 431 U.S. 801.

Despite never specifically addressing whether the denial of parole constitutes a sufficiently compelling penalty, the United States and Idaho Supreme Courts have considered whether other situations encountered by convicted or incarcerated individuals are sufficiently severe. *See, e.g.*, *McKune*, 536 U.S. at 37-38 (plurality opinion); *State v. Van Komen*, 160 Idaho 534, 538-39, 376 P.3d 738, 742-43 (2016).

The United States Supreme Court did not consider the imposition of harsher conditions of confinement sufficiently severe to compel self-incrimination. *McKune*, 536 U.S. at 50 (O'Connor, J., concurring). In *McKune*, a prisoner convicted of various sexual offenses was forced to participate in a prison treatment program prior to his scheduled release. *Id.* at 29-30 (plurality opinion). As part of the program, all inmates were required to complete a sexual history form detailing all prior sexual activities, regardless of whether those activities constituted uncharged offenses. *Id.* at 30. Officials utilized a polygraph examination to verify the

6

truthfulness of the responses, and the responses were not privileged. *Id.* A prisoner's refusal to participate in the program resulted in a significant diminishment of prison rights, including transfer to a maximum-security unit. *Id.* at 30-31. McKune refused to participate in the program on the basis that the required disclosures violated his Fifth Amendment privilege against self-incrimination. *Id*. at 31. In the ensuing appeal, the United States Supreme Court was unable to render a majority decision. *Id.* at 29. In the controlling opinion, authored by Justice O'Connor, she concluded that the consequences facing McKune for remaining silent were not serious enough to compel him to be a witness against himself. *Id.* at 50. And, although it was not the controlling opinion, the plurality opinion considered it significant that McKune's refusal to participate neither extended his term of incarceration nor affected his eligibility for good-time credits or parole. *Id.* at 38 (plurality opinion).

In another case involving a convicted individual, the Idaho Supreme Court held that a district court's relinquishment of jurisdiction was an impermissible penalty in violation of the Fifth Amendment. *Van Komen*, 160 Idaho at 540, 376 P.3d at 744. In *Van Komen*, an individual on probation for a drug offense admitted to violating the terms of his probation. *Id.* at 537, 376 P.3d at 741. The district court revoked Van Komen's probation and retained jurisdiction on the condition that Van Komen take a polygraph examination. *Id.* Although he initially agreed to this condition, Van Komen later refused to take the polygraph examination, and the district court relinquished its jurisdiction based on his refusal. *Id.* at 537-38, 376 P.3d at 741-42. On appeal, the Idaho Supreme Court held that the district court's conduct unconstitutionally penalized Van Komen for assertion of his Fifth Amendment privilege. *Id.* at 540, 376 P.3d at 744.

Similarly, in a Ninth Circuit case involving a convicted individual, the court held that the probation condition requiring the defendant to fully disclose past sexual misconduct or risk having his probation revoked violated his Fifth Amendment right against self-incrimination. *United States v. Antelope*, 395 F.3d 1128, 1139 (9th Cir. 2005). In *Antelope*, an individual on probation for a sex offense was required to disclose prior sexual history and participate in random polygraph examinations as a condition of his probation. *Id.* at 1131. When Antelope refused to participate without promise of immunity from prosecution, the district court revoked Antelope's probation and sentenced him to prison. *Id.* at 1131-32. On appeal, the court opined that by refusing to recognize that the required answers could not be used against Antelope in a future criminal proceeding, Antelope was placed in a catch-22 predicament. *Id.* at 1139. The

7

court ultimately held that the district court's revocation of Antelope's probation unconstitutionally penalized him in violation of his Fifth Amendment privilege. *Id.*

Unlike *McKune*, where the inmate faced a penalty that did not extend his term of incarceration or affect his eligibility for parole, Powell faced a penalty that would not only affect his eligibility for parole, but would blatantly render him ineligible. Regarding the seriousness of the penalty, McKune's assertion of the privilege implicated only a choice among varying conditions of confinement. In contrast, similar to the catch-22 situation faced by Antelope, Powell faced choosing between incriminating disclosures and release or silence and continued confinement. Powell faced a much more severe penalty than McKune. Moreover, similar to *Van Komen*, where the court penalized the defendant by relinquishing jurisdiction for his assertion of his constitutional right to silence, Powell would have been penalized had he asserted his right.

In determining whether a situation rises to the level of a classic penalty situation, the United States Supreme Court provided guidance in *Murphy*:

> The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy*, 465 U.S. at 435.

Based upon these cases, we hold that the facts of Powell's case implicate precisely the type of penalizing conduct contemplated by the courts in classic penalty situation cases. The State's threat of denied parole was a sufficiently substantial penalty to compel Powell to self-incriminate. Because the penalty faced by Powell was sufficiently severe, his failure to affirmatively assert the privilege is excused under the classic penalty situation exception to the invocation requirement of the Fifth Amendment. Therefore, his compelled statements obtained during the parole process were obtained in violation of his Fifth Amendment rights and are inadmissible in a subsequent criminal prosecution against him.

8

Finally, the State argues that because Powell also made the same incriminating admissions to law enforcement officials during a Mirandized interview, the State could properly rely on his statements to law enforcement officers to pursue criminal charges. We are not persuaded by this argument. Powell's voluntary disclosure to law enforcement officials following a *Miranda* warning may not be viewed in isolation from Powell's previously compelled admission. As *Murphy* makes clear, the Constitution bars the use of compelled, incriminating testimonial statements *and their fruits* in subsequent criminal prosecutions. *Murphy*, 465 U.S. at 435 n.7. The reasoning behind this is sound--the State cannot compel a parolee or probationer to provide this kind of incriminating testimonial evidence, which may be used against him in the noncriminal proceeding, and then use that information again, directly or indirectly, to prosecute the individual criminally. *See id.* If the State wishes to use the same incriminating information initially obtained from a compelled interview in a subsequent criminal prosecution, the State has the burden of proving that the information upon which it relies was "derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460 (1972). As the State has made no argument as to why the Mirandized statements were obtained from a source wholly independent of the compelled testimony, we reject the State's argument that the incriminating statements were otherwise admissible. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

## III.

## CONCLUSION

For the reasons set forth above, the district court erred in denying Powell's motion to suppress. The incriminating statements Powell made during the parole process were obtained as a result of a classic penalty situation. Thus, Powell's Fifth Amendment rights were implicated, and his incriminating statements may not be used against him in a subsequent criminal prosecution. Accordingly, we reverse the district court's order denying Powell's motion to suppress and vacate his judgment of conviction.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

9