**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43877**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 62** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  November 20, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **KILO J. LEVEQUE,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. John T. Mitchell, District Judge.

Order revoking probation, <u>affirmed</u>; order relinquishing jurisdiction, <u>reversed</u> and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Kilo J. LeVeque appeals from the district court's order relinquishing jurisdiction. LeVeque also appeals from the district court's decision to revoke his probation prior to the period of retained jurisdiction.

**I.**

**FACTUAL AND PROCEDRUAL BACKGROUND**

Pursuant to a plea agreement, LeVeque pled guilty to burglary, Idaho Code § 18-1401, and possession of methamphetamine, I.C. § 37-2732(c)(1).  The district court imposed concurrent sentences of ten years with four years determinate for the burglary conviction and seven years with four years determinate for the possession of methamphetamine conviction.  The district court also retained jurisdiction.  Following the period of retained jurisdiction, the district court suspended LeVeque's sentence and placed him on probation for three years.

1

When LeVeque's probation officer left employment with the Department of Correction, LeVeque's criminal history was reviewed anew and it was discovered that LeVeque had a previous sex offense conviction in South Dakota. LeVeque was originally charged with felony second degree rape in that state, but the charge was later amended to misdemeanor sexual contact without consent. LeVeque entered a plea of *nolo contendere* to the misdemeanor charge.[1] Because of the South Dakota conviction, LeVeque's terms of probation were amended from general supervised probation to sex offender probation which resulted in additional terms and conditions of supervision. As part of the sex offender treatment, LeVeque was required to answer questions under polygraph examination regarding his sexual history. When asked about his prior conduct in the South Dakota case, LeVeque denied sexual contact occurred without consent and the polygraph indicated that he was deceptive in his answers. This led to LeVeque being dismissed from sex offender treatment.

LeVeque filed a motion to end probation and reduce terms of probation in which LeVeque requested that the district court reduce the time frame of supervised probation and "eliminate his status in any way as a 'sex offender' or some similar label." The district court denied the motion finding that the court "lacks the ability to dictate how to classify and supervise LeVeque to an executive branch agency such as the State of Idaho Department of [Correction]. LeVeque's motion flies in the face of the doctrine of separation of powers." In its order, the district court noted that LeVeque had willfully violated his supervised probation by testing positive twice for using alcohol, failing his sexual history polygraph examination, and testing positive for a controlled substance (Kratom).

Thereafter, the State filed a report of probation violation alleging that LeVeque failed to comply with the terms of his sex offender probation, including: (1) engaging in an unapproved sexual relationship, (2) being terminated from his sex offender treatment program, and (3) lying on his polygraph examinations. LeVeque denied the allegations and the district court held an evidentiary hearing. At the hearing, LeVeque requested the district court declare the specific terms of the sex offender probation to be improper in his case. The district court responded, stating: "I don't have the jurisdiction to tell an executive branch agency like the Idaho

---

[1]   No Idaho statute or criminal rule recognizes *nolo contendere* as a valid plea in Idaho courts. However, Idaho courts do recognize *nolo contendere* pleas validly entered in other jurisdictions. *State v. Salisbury*, 143 Idaho 476, 480, 147 P.3d 108, 112 (Ct. App. 2006).

2

Department of Corrections how to supervise you. It's their business and their business alone how they choose to classify you, what terms and conditions to put upon you."

The district court found that LeVeque had willfully violated his probation. The district court revoked probation and executed the underlying sentence, but again retained jurisdiction. The court noted that although it did not view LeVeque as a good candidate for probation, it wanted him to engage in sex offender treatment and give him an opportunity to prove the court wrong. In its probation violation disposition, the district court stated that it was recommending sex offender treatment after LeVeque disclosed the circumstances of the South Dakota conviction in a polygraph examination. However, rather than place LeVeque in the sex offender treatment program, the Department of Correction assigned LeVeque to a drug offender treatment program, which he successfully completed, and never administered the district court's recommended polygraph examination.

At the subsequent jurisdictional review hearing, the State recommended probation although the prosecutor expressed concern that LeVeque had not been required to complete a sex offender rider. LeVeque also asked for probation. The district judge noted that LeVeque had not completed the polygraph. LeVeque complained that he had not been afforded the opportunity to do so. Regardless, the district court relinquished jurisdiction. LeVeque timely appeals.

## II.

## ANALYSIS

LeVeque argues that the district court abused its discretion both when it revoked LeVeque's probation prior to the period of retained jurisdiction and when it relinquished jurisdiction.

### A. Revocation of Probation

It is within the trial court's discretion to revoke probation if any of the terms and conditions of the probation have been violated. I.C. §§ 19-2603, 20-222(2); *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992); *State v. Adams*, 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct. App. 1989); *State v. Hass*, 114 Idaho 554, 558, 768 P.2d 713, 717 (Ct. App. 1988). Once a probation violation is established, the district court must then determine whether to revoke or continue probation. *State v. Sanchez*, 149 Idaho 102, 105, 233 P.3d 33, 36 (2009). In determining whether to revoke probation, a court must examine whether the probation is achieving the goal of rehabilitation and is consistent with the protection of society. *State v.*

3

*Upton*, 127 Idaho 274, 275, 899 P.2d 984, 985 (Ct. App. 1995); *Beckett*, 122 Idaho at 325, 834 P.2d at 327; *Hass*, 114 Idaho at 558, 758 P.2d at 717.  A district court's decision to revoke probation will not be overturned on appeal absent a showing that the court abused its discretion. *Sanchez*, 149 Idaho at 105, 233 P.3d at 36.  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

LeVeque argues that the district court erred because it did not perceive the outer bounds of its discretion.  Specifically, LeVeque contends that because the district court did not recognize its authority to consider LeVeque's challenges to the terms of his probation, it failed to determine whether the terms of probation were valid before reaching the factual predicate as to whether there was an actual violation.  Therefore, its decision to revoke LeVeque's probation was an abuse of its discretion and should be vacated.  On the other hand, the State asserts that the district court properly exercised its discretion when it revoked LeVeque's probation.

Idaho Code § 20-222(2) provides that "the court may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the defendant to be arrested. Thereupon the court . . . may revoke the probation and suspension of sentence and cause the sentence imposed to be executed."  According to the district court's comments at LeVeque's evidentiary hearing, its decision to revoke probation was based upon the following considerations.  First, the court found that all of the probation violation allegations had been proven.  Second, the court observed that LeVeque had "acted like a spoiled, entitled infant" throughout the case.  Third, LeVeque's conduct showed his unwillingness to comply with rules of probation. Fourth, the court was concerned that LeVeque had made a false statement pertaining to his sobriety during his right of allocution.  Thus, the district court found that LeVeque violated terms of his probation, both for the conditions set forth as a sex offender and also because he twice tested positive for alcohol consumption and once for Kratom.  The district court also noted that LeVeque had not cooperated with his probation officer and stated that the court had no confidence that LeVeque would be successful on probation.

4

LeVeque correctly points out that "before a court reaches the factual predicate as to whether there was an actual [probation] violation, a determination must be made as to whether the term violated is valid." *State v. Jones*, 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct. App. 1993). LeVeque argues that the district court did not address his challenge that the specific terms of the sex offender probation were valid. In fact, the district court considered and rejected LeVeque's challenge to his probation terms at the probation violation admit/deny hearing and in its order denying the motion to end probation or reduce terms of probation. The district court recognized the limits on its authority to tell the Department of Correction how to classify and supervise probationers. And, after reviewing the case reports and other attachments from South Dakota, the district court also recognized the propriety of those terms and conditions, noting its "substantial concerns about protection of the public, future criminal behavior, potential sexual behavior." Thus, the district court considered LeVeque's challenges to the various sex offender terms and conditions of his probation and three times it rejected those challenges. The district court did not abuse its discretion by revoking probation.

## B.    Relinquishment of Jurisdiction

LeVeque argues that the district court relinquished jurisdiction solely because he did not participate in a full-disclosure polygraph during his period of retained jurisdiction. The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333.

### 1.    Invocation

LeVeque asserts that the district court's order to participate in the polygraph was a violation of his Fifth Amendment right against compelled self-incrimination. The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." This privilege applies to the states through

the Fourteenth Amendment. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-86 (1998). It is well-accepted that the protections of the Fifth Amendment extend beyond the context of a criminal trial, granting an individual the right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). These protections are not lost by conviction or incarceration--the United States Supreme Court has specifically held that an individual does not lose the Fifth Amendment's protections merely because he or she made incriminating statements while incarcerated or on probation. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). An individual protected by the privilege may rightfully refuse to answer unless and until the individual is granted immunity against future use of the compelled answers in a subsequent criminal proceeding. *Id.* Absent such immunity, if the individual is nevertheless compelled to answer, the answers "are inadmissible in a subsequent trial for a crime other than that for which he has been convicted." *Id.*

Ordinarily, to be afforded the protections of the Fifth Amendment, a defendant must affirmatively invoke the privilege. *United States v. Monia*, 317 U.S. 424, 427 (1943); *State v. Crowe*, 131 Idaho 109, 112, 952 P.2d 1245, 1248 (1998). This duty to claim the privilege remains with the individual even when the government is unquestionably attempting to compel a response. *Garner v. United States*, 424 U.S. 648, 654 (1976). "[I]f a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Id.* Thus, if the individual being questioned does not assert the privilege and instead voluntarily responds without protest, the responses are ordinarily not considered to have been compelled within the meaning of the Fifth Amendment. *Murphy*, 465 U.S. at 427-28.

Despite the fact that LeVeque had already been convicted of a crime as a result of the events in South Dakota about which he was to be questioned, the Fifth Amendment protections were still available to him. However, LeVeque never affirmatively asserted his Fifth Amendment privilege or refused to answer questions.

2.     **Waiver**

LeVeque asserts that without a waiver of his right to remain silent, using his silence against him violates the Fifth Amendment. LeVeque argues that he did not waive his Fifth Amendment right. The State contends that LeVeque did waive his right to remain silent when he

6

answered questions put to him during previous polygraph tests administered as part of the terms of his sex offender probation. The burden rests upon the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *State v. Mitchell*, 104 Idaho 493, 497, 660 P.2d 1336, 1340 (1983); *State v. Padilla*, 101 Idaho 713, 718, 620 P.2d 286, 291 (1980).

The Idaho Supreme Court has held that it is clear "both at the point of sentencing and earlier, for purposes of a psychological evaluation, a defendant's Fifth Amendment privilege against self-incrimination applies." *Estrada v. State*, 143 Idaho 558, 563, 149 P.3d 833, 838 (2006). Nonetheless, a defendant may not selectively assert his Fifth Amendment privilege against self-incrimination in order to control what information is before the court. The general rule regarding waiver of the privilege is that "a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999). The United States Supreme Court's rationale in *Mitchell* was that permitting a witness to "pick and choose what aspects of a particular subject to discuss" would cast doubt on the "trustworthiness of the statements" and diminish "the integrity of the factual inquiry." *Id.* at 322. That Court was concerned that permitting a witness to control the topics on which he or she will answer questions could distort the facts and "make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id.* Thus, when a defendant puts a matter before the sentencing court, thereby waiving the privilege, the defendant may not then invoke the privilege as to other matters related to the same subject.

The record before the Court shows that on four occasions, LeVeque signed release forms consenting to participate in a polygraph. LeVeque does not point to an occasion where he chose to subsequently invoke his right. Therefore, because he did not expressly invoke his Fifth Amendment right and, in fact, waived the right in order to claim the protection of his Fifth Amendment right, LeVeque asserts, as discussed below, that he was not required to affirmatively assert the right.

### 3. Classic penalty

LeVeque argues that his failure to affirmatively invoke the Fifth Amendment right should be excused because he was faced with a classic penalty situation. An individual's failure to

affirmatively assert his or her Fifth Amendment privilege does not necessarily preclude its benefit. *See Garner*, 424 U.S. at 656-57. The United States Supreme Court has previously held that a defendant's failure to affirmatively invoke Fifth Amendment protections may be excused in situations where that individual is denied a "free choice to admit, to deny, or to refuse to answer." *Id.* The Court has recognized that such coercion occurs where the very assertion of the privilege is penalized so as to "foreclose a free choice to remain silent." *Murphy*, 465 U.S. at 437. Such circumstances are commonly referred to as a "classic penalty situation." *Id.* at 435. To constitute a penalty situation, the individual must be faced with the government's assertion, either expressly or impliedly, that invocation of the Fifth Amendment will lead to a substantial penalty. *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 805-06 (1977). Consequently, LeVeque must have been threatened that invoking his Fifth Amendment right to silence would be met with a substantial penalty such that he was deprived of the ability to voluntarily invoke the privilege. *See Cunningham*, 431 U.S. at 806. LeVeque contends that the district court threatened to relinquish jurisdiction and impose his original sentence and this threat constituted that substantial penalty.

The Idaho Supreme Court has held that a district court's relinquishment of jurisdiction could be an impermissible penalty in violation of the Fifth Amendment. *State v. Van Komen*, 160 Idaho 534, 540, 376 P.3d 738, 744 (2016). In *Van Komen*, an individual on probation for a drug offense admitted to violating the terms of his probation. *Id.* at 537, 376 P.3d at 741. The district court revoked Van Komen's probation and retained jurisdiction on the condition that Van Komen take a polygraph examination. *Id.* Although he initially agreed to this condition, Van Komen later refused to take the polygraph examination, and the district court relinquished its jurisdiction based on his refusal. *Id.* at 537-38, 376 P.3d at 741-42. On appeal, the Idaho Supreme Court held that the district court's conduct unconstitutionally penalized Van Komen for assertion of his Fifth Amendment privilege. *Id.* at 540, 376 P.3d at 744.

Similarly, in a Ninth Circuit case involving a convicted individual, the court held that the probation condition requiring the defendant to fully disclose past sexual misconduct or risk having his probation revoked violated his Fifth Amendment right against self-incrimination. *United States v. Antelope*, 395 F.3d 1128, 1139 (9th Cir. 2005). In *Antelope*, an individual on probation for a sex offense was required to disclose prior sexual history and participate in random polygraph examinations as a condition of his probation. *Id.* at 1131. When Antelope

refused to participate without promise of immunity from prosecution, the district court revoked Antelope's probation and sentenced him to prison. *Id*. at 1131-32. On appeal, the court opined that by refusing to recognize that the required answers could not be used against Antelope in a future criminal proceeding, Antelope was placed in a "Catch-22" predicament. *Id*. at 1139. The court ultimately held that the district court's revocation of Antelope's probation unconstitutionally penalized him in violation of his Fifth Amendment privilege. *Id*.

Further, this Court recently held that telling a potential parolee that his failure to answer questions about uncharged sexual conduct would result in the denial of parole was enough to create the classic penalty scenario. *State v. Powell*, 161 Idaho 774, 781, 391 P.3d 659, 666 (Ct. App. 2017). In that case, Powell was convicted of lewd conduct with a minor under sixteen. *Id*. at 776, 391 P.3d at 661. He subsequently moved to suppress evidence obtained during a prehearing interview and parole board hearing in which he admitted to engaging in lewd conduct with additional victims. *Id*. at 776-77, 391 P.3d at 661-62. This Court determined that even though Powell did not affirmatively assert his Fifth Amendment right, the threat of denied eligibility for parole if Powell did not voluntarily participate in the parole process constituted a sufficiently compelling penalty to implicate the classic penalty exception to the invocation requirement. *Id*. at 780-81, 391 P.3d at 665-66. Powell faced choosing between incriminating disclosures and release or silence and continued confinement. *Id*. at 781, 391 P.3d at 666. Therefore, Powell's compelled statements were obtained in violation of his Fifth Amendment rights and were inadmissible in the subsequent criminal prosecution. *Id*.

In determining whether a situation rises to the level of a classic penalty situation, the United States Supreme Court provided guidance in *Murphy*:

> The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Murphy*, 465 U.S. at 435.

9

Thus, we turn to the language used by the district court to ascertain whether LeVeque was threatened that invoking his Fifth Amendment right to silence would be met with a substantial penalty such that he was deprived of the ability to voluntarily invoke the privilege. *See Powell*, 161 Idaho at 779, 391 P.3d at 664. First, at the probation violation hearing, the district court stated:

> [T]he extensive attachments attached to the Report of Probation Violation . . . convince me without any doubt that there is substantial concerns about protection of the public, future criminal behavior, potential sexual behavior.
>
> A lot of these polygraphs that have--that Mr. LeVeque has tested deceptively on are--are questions that are non-sexual. Since your last polygraph have you ingested any intoxicating substances? Committed any travel violations? There are certainly a lot of questions that deal with sexual conduct, illegal sexual conduct, and then also the statement of the cousin [name] and what is admitted to regarding cousin [name] and what was tested as deceptive regarding cousin [name], so I'm denying the motion [for bond].

In its first order denying an Idaho Criminal Rule 35 motion, the district court noted:

> Counsel for LeVeque admits LeVeque was charged in South Dakota with rape in 2010 or early 2011, and he pled guilty to "Sexual Contact without Consent" a "Class 1 misdemeanor." The victim in that case was LeVeque's cousin (whose name will be withheld for purposes of this opinion). While on probation in the present case, LeVeque was ordered by his probation officer to take a polygraph test, to [sic] of the questions asked on September 11, 2015, were "Did you have sexual intercourse with your cousin, ___, when she didn't want to in 2011?" and "Even one time, did you have sexual intercourse with your cousin ___, when she didn't want to?" LeVeque answered "No" to both of those and, allegedly, his polygraph showed as deceptive[.]

(citations omitted).

At the disposition hearing, the district court made the following observation about LeVeque's testimony related to an unauthorized relationship that resulted in a probation violation: "I don't find Mr. LeVeque to be credible as to his explanation as to what time period he was thinking of regarding prior sex with [name]. I don't find any of--I find Mr. LeVeque specifically not to be credible . . . ." At the conclusion of the hearing, the district court opined:

> Your history in this case is abysmal. You have acted like a spoiled, entitled infant ever since I met you. You whined to me about Sam Eismann's sterling representation of you years ago. You haven't cooperated on probation. I don't have the jurisdiction to tell an executive branch agency like the Idaho Department of Corrections how to supervise you. It is their business and their

business alone how they choose to classify you, what terms and conditions they choose to put upon you, and you've violated those terms and conditions.

I am going to retain jurisdiction for up to a year only for one reason, and that's because exactly a week ago today I was told that the State of Idaho on a retained will have sex offender treatment, and that is what I will recommend and we'll get to the bottom of all this so that the Department knows exactly how to supervise you, but if it wasn't for that new information, if what I had available to me was simply a Sex Offender Assessment Group, I would bypass that and I would just have you serve out your sentence.

Right now I don't feel that there is any hope for you to be successful on probation, and that includes even after a retained, so you need to come back here a year from now and convince me that you've done something that would cause me to believe that you can be honest and that you can be safely supervised on probation.

. . . .

If you can't convince me that you truly have changed on this rider, you need to know I will send you to prison, and I will do so without hesitation. I think that at the present time you are non-rehabilitatable and you simply need to go away, and society needs to be protected from you for the most amount of time that I can, so you've got a year to come up with a track record that convinces me otherwise.

Thereafter, in its probation violation disposition order, the district court pronounced as follows:

**THE COURT SPECIFICALLY RECOMMENDS SEX OFFENDER <u>TREATMENT</u>, AFTER HE FULLY DISCLOSES HIS INVOLVEMENT IN HIS SOUTH DAKOTA CRIME, AND THAT HIS DISCLOSURE IS VERIFIED WITH A POLYGRAPH. THIS OFFENDER NEEDS AS MUCH COGNITIVE RESTRUCTURING AS POSSIBLE. HE IS NOT HONEST.**

LeVeque asserts that the district court placed him in a classic penalty situation. Therefore, any failure to invoke the Fifth Amendment privilege is excused and any indication of willingness to cede to that pressure would be impermissibly coerced. The district court did not expressly threaten LeVeque with a penalty if he invoked his Fifth Amendment privilege. The question, then, is whether the district court impliedly threatened the penalty. It did. The district court was focused on LeVeque's sexual past, particularly the South Dakota situation, as evidenced by the written order. The district court was through with LeVeque's antics and deception and told him that the court was prepared to send him to prison. The district court determined to retain jurisdiction only because it had learned of the availability of sex offender treatment, expressly indicating that "we'll get to the bottom of all this so that the Department knows exactly how to supervise you." The "bottom of all this" is, as set out in the written order,

11

LeVeque's "INVOLVEMENT IN HIS SOUTH DAKOTA CRIME." Clearly, the district court felt it necessary in order for probation to be possible. While the district court was also legitimately concerned, as a general matter, with LeVeque's honesty, the court indicated that after the retained jurisdiction period it would send LeVeque to prison if he had not done something to convince the court that he could be honest and be "safely" supervised on probation. The demonstration contemplated by the district court, as set out in the order, was the full disclosure of his involvement in the South Dakota crime, verified by polygraph. LeVeque's silence would be met with the substantial penalty of imprisonment and, thus, he was placed in the classic penalty situation.[2]

### 4.      Relinquishment of jurisdiction

LeVeque contends that the situation in this case is a "nearly identical error" as that assigned to the district court in *Van Komen*. In that case, Van Komen admitted to violating the terms of his probation for a drug offense by having a romantic relationship with an underage girl. *Van Komen*, 160 Idaho at 537, 376 P.3d at 741. The district court revoked Van Komen's probation and retained jurisdiction on the condition that Van Komen take a polygraph examination. *Id.* Although he initially agreed to this condition, Van Komen later refused to take the polygraph examination, and the district court relinquished its jurisdiction based on his refusal. *Id.* at 537-38, 376 P.3d at 741-42. Van Komen argued the district court did not act consistently with applicable legal standards by relinquishing jurisdiction because he had asserted a Fifth Amendment right against self-incrimination at his review hearing. On appeal, the Idaho Supreme Court agreed noting that the only apparent purpose of the polygraph was to obtain information that could have led to new felony charges against Van Komen. Therefore, the Court held that the district court's conduct unconstitutionally penalized Van Komen for assertion of his Fifth Amendment privilege. *Id.* at 540, 376 P.3d at 744.

In *Van Komen*, the district court stated:

> The reason that I am revoking your probation is you haven't done what I ordered you to do when I sent you on a rider, and that was to get a polygraph evaluation to assess both the truthfulness of no alcohol or drugs after March 28th, 2013, and the extent of any sexual activity with [the sixteen-year-old girl].

---

[2]      Consequently, we need not address LeVeque's alternative contention that this case exists within the context of "pure privilege," in which invocation is unnecessary. We have also considered and reject the State's argument that there was no potential for incrimination as to the South Dakota crime and that the issue is not preserved for appeal.

*Id.* at 538, 376 P.3d at 742.

In the present case, after the period of retained jurisdiction, a jurisdictional review hearing was held. At that time, the district court stated:

> I am going to relinquish jurisdiction and impose the prison sentence that was originally imposed for the felony crime of burglary . . . .
>
> My order was very specific, that you should also obtain any treatment programming for sexual abuse that you experienced--I'm sorry. That was an earlier order. Most recently on this rider, "The Court specifically recommends sex offender treatment after he fully discloses his involvement in his South Dakota crime and that his disclosure is verified with a polygraph. This offender needs as much cognitive restructuring as possible. He is not honest." And while certainly the Department of Corrections determines what treatment you're given, you could've arranged for a full disclosure polygraph that was passable or passed either before you went on your rider or after you returned, and you haven't, and so I don't see a situation right now where you could be supervised on probation. You--you haven't done anything to correct the same problem that existed back prior to February.

The district court concluded, "I'm issuing my order. If you want to bring some other motion, that's fine, but the time for all that to be decided I made pretty clear in my order; *I made explicitly clear in my prior order. It's not been taken care of.*" (emphasis added). Similarly, in a second order denying an I.C.R. 35 motion, the district court stated:

> On September 7, 2016, *this Court relinquished jurisdiction and sent LeVeque to prison to serve the rest of his prison sentence because, in spite of the Court's clear warning on February 2, 2016, . . . LeVeque did not obtain a full disclosure polygraph* while in the custody of the State of Idaho Department of Correction, nor did he or his attorney arrange for one privately or even with Court administered funds prior to his September 7, 2016, hearing.

(emphasis added). While Van Komen expressly invoked his right, here, invocation is excused due to the penalty situation. However, like *Van Komen*, the district court, in its own words, relinquished jurisdiction because LeVeque did not fully disclose his involvement in the South Dakota crime. We therefore remand this case for redetermination of whether to suspend LeVeque's sentence and place him on probation. As the Supreme Court held in *Van Komen*, that redetermination must be by a different judge to be appointed on remand.

### III.

### CONCLUSION

The district court did not abuse its discretion by revoking Leveque's probation. The district court erred in relinquishing jurisdiction. The order revoking probation is affirmed. The

13

order relinquishing jurisdiction is reversed and this case is remanded for redetermination of that issue by a different judge.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.