# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43938-2016

STATE OF IDAHO, )
         )     **Boise, June 2016 Term**
    Plaintiff-Respondent, )
         )     **2016 Opinion No. 80**
v. )
         )     **Filed: July 22, 2016**
MARCOS APOLLO JIMENEZ, )
         )     **Stephen W. Kenyon, Clerk**
    Defendant-Appellant. )
         )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Bingham County. Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is <u>affirmed</u>.

Jenny C. Swinford, Deputy State Appellate Public Defender, Boise, argued for appellant.

Mark W. Olson, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Bingham County from a judgment sentencing a child molester to prison. He contends that the district court violated his Fifth Amendment rights by drawing negative inferences based upon his refusal to submit to a psychosexual evaluation. We affirm the judgment of the district court.

## I.
## Factual Background.

In September 2013, 44-year-old Marcos Jimenez ("Defendant") was at his girlfriend's apartment after she had gone to work leaving him to care for her 17-year-old daughter, who had the mental capacity of a 10-year-old and a learning disability. Defendant had told the daughter that he would take her to town to buy her a computer, but first she had to take a shower. While she was doing so, he removed her clothing from the bathroom. When she came out of the bathroom with a towel wrapped around her, Defendant was waiting and told her that he wanted

to show her something. He took her clothing into the bedroom, and she followed him to regain her clothing. Once in the bedroom, he put gel on his fingers and told her he wanted to show her what an orgasm was like. He then penetrated her vagina with his finger. She felt very uncomfortable and told him she had to use the bathroom. When she came out of the bathroom, he told her "just a few minutes more," but she protested. He then picked her up and put her on the bed. After climbing on top of her, he began kissing her neck and then penetrated her vagina slightly with his penis. She told him to stop and pushed him off. He left the room, and after she was dressed he took her to town and bought her a computer.

Defendant was charged with sexual battery of a child seventeen years of age and rape. Pursuant to a plea bargain, he pled guilty to the sexual battery charge, and the State dismissed the rape charge. The district court ordered Defendant to have a psychosexual evaluation, which included a polygraph examination, and informed him that he had a Fifth Amendment right to refuse to answer any questions during that evaluation. The court set the matter for sentencing.

Defendant ultimately decided to exercise his right to remain silent and refused to have the psychosexual evaluation. The court sentenced Defendant to eighteen years in the custody of the Idaho Board of Correction with three years fixed followed by an indeterminate period of fifteen years. The court also imposed a fine of $5,000 and a fine of $5,000 that is payable to the girl and her mother. Defendant was also required to register as a sex offender for the rest of his life. Defendant timely appealed. He contends that the court violated his Fifth Amendment rights because it drew adverse inferences from his refusal to submit to the psychosexual evaluation.

The appeal was initially heard by the Idaho Court of Appeals, which affirmed the judgment of the district court. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we do not review the decision of the Court of Appeals. We hear the case anew as if the appeal had initially come directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).

## II.
### Did the District Court Violate Defendant's Fifth Amendment Right to Remain Silent?

Under the Fifth Amendment privilege against self-incrimination, a criminal defendant has the right not to participate in a psychosexual evaluation. *Estrada v. State*, 143 Idaho 558, 564, 149 P.3d 833, 839 (2006). The issue in this case, as framed by Defendant, is, "Did the district

court err by using Mr. Jimenez's decision to exercise his right not to participate in the psychosexual evaluation against him at sentencing?" The United States Supreme Court has not decided the issue of whether a court could draw an adverse inference against a defendant from the defendant's silence at sentencing where such inference does not involve a factual determination regarding the circumstances and details of the crime. *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014). We need not decide that issue, because the record does not indicate that when imposing sentence the court drew an adverse inference from Defendant's silence.

At the commencement of the sentencing hearing, the district court explained to Defendant that without an assessment of his risk, the court would make its decision based upon the circumstances of the case. The dialogue was as follows:

> THE COURT: The point I'm making is that if the court doesn't have an assessment of your risk, that I would be within my authority from the totality of the circumstances, specifically the circumstances of this case that I have before me, to assume that you are a significant risk. Do you understand that?
> THE DEFENDANT: Risk, but then you have the rest of my history. There is no other charges.
> THE COURT: Well, I have your criminal history, but I don't know your full sexual history. In other words I don't know whether you've abused other minors; I don't know whether or not you have a history of this kind of behavior, I just know you've never been charged with it before.
> THE DEFENDANT: I see what you are saying.
> THE COURT: Okay. And so that's the record before me, and I'll have to make my decision based upon the information I have, not the information I don't have.
> And so one of the reasons we have a psychosexual evaluation is so that the court can understand who you are and what type of a person you are. If I don't have any information, then I have to look at the facts of this case and pretty much nothing else, or there is very little else in the record to help me make a decision about what kind of a person you are. I just know what you've done here, and that tells me what kind of a person you are, unless there are some other factors.
> Now there might be reasons why you don't want me to know your past, and if you don't want me to know your past, then I can't make you tell me; and the Constitution says you don't have to tell me. *But if I don't know your past, then I'm going to have to just judge you by the type of man I know you are from the information that's before me.* Do you understand?
> THE DEFENDANT: Yes.

(Emphasis added.)

Later in the hearing and before announcing its sentence, the district court stated that it could draw an adverse inference from Defendant's refusal to submit to the psychosexual evaluation, but that would not be a factor in its sentence and the court would base its sentence on the information the court had. The court stated:

> The court is very aware that you have no record. I'm not sure what to make of that without a psychosexual evaluation or the polygraph. I could assume that that means that you've just never broken the law in your entire life, or I could assume that you've never been caught; sometimes it's somewhere in between. I do note some of the most dangerous criminals are the ones that are good enough to get away with it. But, again, I just don't have any evidence there to give me confidence of what conclusions I should a [sic] draw from that. I can only assume, though, that the fact that you didn't participate must mean there's some information you don't want me to know about. I wouldn't hold that against you at a trial, that would be wrong because you have a right to remain silent at your trial and you do have a right to remain silent here now, too. But generally if there is something that you didn't want me to know, I can only assume there is a good reason you didn't want me to know it. *But, again, those things really played no factor in my sentence. I just have to deal with the case as what it is, and not what it's not, and my discussion is based on the information I do have.*

(Emphasis added.)

Despite the district court's statements to the contrary, Defendant contends that the court did draw adverse inferences against him because of his assertion of his Fifth Amendment rights. Defendant points to the court's statement that without an assessment of Defendant's risk of reoffending, the court would err on the side of protecting the community. The statement in context was as follows:

> First of all, I am required to by law look at the objectives of criminal punishment set forth by the *Toohill* decision [103 Idaho 565, 650 P.2d 707 (Ct. App. 1982)], as the prosecutor mentioned; the first and foremost of those factors I'm supposed to consider is protection of society. With no risk assessment, I think it would be improper for this court to do anything else other than err on the side of safety. I have to make sure we keep this community safe. And this is the paramount concern that I must have.

Defendant also points to the district court's statement that without a psychosexual evaluation, it could not assess Defendant's potential for rehabilitation and so would "have to go back to protection of society." The court's statement in context was as follows:

> Next, the court has to consider the possibility of rehabilitation. This is where the lack of a psychosexual evaluation really puts the court at a

4

disadvantage, because I don't know how amenable you are for rehabilitation, whether or not you can be treated through counseling in the community or whether or not you need to be incarcerated. So, again, with no assessment there, I have to go back to protection of society, and I still have a responsibility to try to get you help, and I want to do that, Mr. Jimenez. Normally my inclination would be to give you the least degree of supervision necessary to get you the type of help that you need. In other words it's kind of like prescribing medication, I want to give you enough medication to cure you but not more than you need. But here, without the evaluation, I don't know how amenable you are to treatment in the community.

The objectives of criminal punishment are protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, *State v. Carver*, 155 Idaho 489, 496, 314 P.3d 171, 178 (2013), with the primary objective being the protection of society, *State v. Calley*, 140 Idaho 663, 666, 99 P.3d 616, 619 (2004). Defendant did not begin the sentencing hearing with the possibilities of incarceration or of probation being in equipoise. The district court stated that "this was a terrible crime, one of the more reprehensible acts I've seen." The court also stated that it attempts to discern between evil and stupidity and will give someone who acts out of stupidity a second chance. With respect to Defendant, the court stated, "Everything about this case tells me this wasn't about stupidity, this was an evil act no matter how you define the term, and so it needs to be punished as an evil act." In his comments, defense counsel stated, "I would submit to the court that the crime in itself, Mr. Jimenez understands that there is going to be incarceration here; he knows that." In fact, defense counsel recommended a sentence two to four years in prison, hopefully two years, followed by a "lengthy" indeterminate sentence during which Defendant could be on supervised parole, if he could "get past" the Idaho Commission of Pardons and Parole. That is essentially the sentence that the court imposed.

Commenting on the fact that without the psychosexual evaluation there was a lack of evidence regarding Defendant's amenability to treatment in the community and his corresponding risk does not constitute drawing an adverse inference from Defendant's silence. There is a difference between drawing an adverse inference and recognizing the lack of evidence. An inference is "[a] conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary 781 (19th ed. 2010). The record is clear that the district court did not infer that Defendant was not amenable to rehabilitation and was a high risk to the community based upon his refusal to submit to a psychosexual evaluation.

5

Defendant had planned a forcible rape upon a vulnerable teenage girl who had diminished mental capacity apparently in the twisted belief that she would enjoy it. His conduct showed that he was a risk to the community. Defendant had an opportunity to present whatever information or evidence he desired in mitigation. He did not present any expert testimony regarding his amenability to treatment or his risk to the community. He obviously was not required to do so, but the court could certainly take into consideration the lack of such evidence when deciding whether to place Defendant on probation.

Defendant also contends that the district court drew an adverse inference regarding the facts of the crime from his refusal to submit to the psychosexual evaluation. The victim's account of what occurred would also support Defendant having committed the crime of rape. During the sentencing hearing, the court asked if there were any changes to the presentence investigation report, and defense counsel responded that Defendant said that "he did not have sexual intercourse of the kind of putting his penis inside the victim." The court noted Defendant's version differed from the victim's, but the court could not change the report. The court then stated:

> THE COURT: I do recognize that there is some disagreement there. I do know what he pled guilty to.
> MR. BROWNING: Yes, your Honor.
> THE COURT: And at the time he entered his plea he made those comments under oath, and that certainly will be the primary focus of the court.
> MR. BROWNING: Thank you, your Honor.
> THE COURT: And, again, he would have had the right to discuss this issue with a polygrapher, but apparently he didn't want to participate in that.

Defendant contends that the district court's statement shows that it drew an adverse inference regarding the facts of the crime from Defendant's refusal to submit to the psychosexual evaluation.

In *Mitchell v. United States*, 526 U.S. 314 (1999), the defendant pleaded guilty to one count of conspiring to distribute five or more kilograms of cocaine, reserving the right to contest the quantity of cocaine attributable to her under that charge. *Id*. at 317. Three of the co-conspirators pleaded guilty and agreed to testify at the trial of nine other co-conspirators. *Id*. at 318. During their testimony, they stated that the defendant regularly sold cocaine for the ringleader. *Id*. The defendant did not testify at her sentencing hearing, but her counsel argued that she was only responsible for the two ounces of cocaine that she had sold to the undercover

6

informant. *Id.* at 319. The trial court held that the defendant had sold more than five ounces of cocaine, thus mandating a minimum sentence of ten years, because the defendant had not come forward and testified to the contrary. *Id.* On appeal, the Supreme Court held, "By holding petitioner's silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id.* at 330.

Defendant in this case likewise asserts that the district court's above-quoted statement shows that it drew adverse inferences against him regarding the facts of the crime because he did not submit to the psychosexual evaluation. The record is to the contrary. The disputed facts relate to the rape charge, which was dismissed. To the extent that the court may have taken into consideration that Defendant committed the rape, as opposed to only attempting to do so, such facts were based upon the victim's account as recorded by the nurse who interviewed her three days afterward. That account was included in the presentence investigation report, as was the probable cause statement that set forth facts consistent with Defendant having committed a rape. Even the statement by Defendant's counsel does not state facts inconsistent with him having committed a rape. According to his counsel, Defendant denied having "sexual intercourse of the kind of putting his penis inside the victim." The victim did not contend that Defendant put his penis inside her. She reported that when Defendant climbed on top of her, he tried to put his penis in her vagina and penetrated her "a little." With respect to the crime of rape, "[a]ny sexual penetration, however slight, is sufficient to complete the crime." I.C. § 18-6103. Thus, Defendant's contention that he did not commit rape may be based upon his misunderstanding of what constitutes that crime. Nevertheless, there is nothing in the record indicating that the court's sentence was based upon it drawing an adverse inference from Defendant's refusal to submit to the psychosexual evaluation.

### III.
### Conclusion.

We affirm the judgment of the district court.


Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**

7