IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 46401

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 24, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JEREMY V. GUZMAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John Mitchell, District Judge.

Order relinquishing jurisdiction, vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jeremy V. Guzman appeals from the district court's order relinquishing jurisdiction. We vacate the court's order and remand this case for further proceedings.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Guzman was charged with four counts of lewd conduct with a minor under the age of sixteen, Idaho Code § 18-1508. Pursuant to a plea agreement, Guzman pled guilty to one count of lewd conduct and the State dismissed the remaining counts.

Before sentencing, Guzman waived his Fifth Amendment privilege against self-incrimination and submitted to a psychosexual evaluation (PSE) and a full disclosure polygraph examination (polygraph). The PSE indicated that Guzman was "at average to moderate risk of sexual recidivism" and needed "sex offender treatment." The polygraph examiner asked three relevant questions:

1

(1) Do you have more sexual victims then [sic] you have told me about today?
(2) Have you purposely withheld information from me today about other victims?
(3) Do you have any victims in [sic] which you sexually assaulted with the use of physical force?

Guzman responded "no" to each question, and the examiner opined Guzman's responses were truthful.

At sentencing in December 2017, the State recommended a sentence of five years determinate and ten years indeterminate. Guzman asked for a suspended sentence or for the court to retain jurisdiction, emphasizing his possibility for rehabilitation. The district court imposed a unified sentence of twenty-five years with four years determinate but retained jurisdiction for up to 365 days. Further, the court stated it would not consider placing Guzman on probation unless the court received a new PSE verified by a full disclosure polygraph at the end of the period of retained jurisdiction:

> I won't consider probation a year from now when you come back if you don't have a full disclosure polygraph and another complete sex offender assessment, and one that indicates that you're at the low end of risk to reoffend in a sexual way.
> . . . .
> . . . Do not be surprised when you come back if I impose your prison sentence, and I guarantee you I will impose your prison sentence if you don't come back here with a new psychosexual evaluation, verified by a full disclosure polygraph that comments on the reasons why you did this horrible act over time, on a repeated basis . . . .

Following the sentencing hearing, the district court entered its sentencing order recommending a new PSE:

> THE COURT RECOMMENDS for the defendant SEX OFFENDER ASSESSMENT AND TREATMENT, WITH AN OPINION AT THE END OF THAT ASSESSMENT AND TREATMENT AS TO HIS RISK TO REOFFEND.
>
> THE COURT WILL NOT CONSIDER PROBATION AT THE END OF THE PERIOD OF RETAINED JURISDICTION WITHOUT A NEW FULL-DISCLOSURE POLYGRAPH AND NEW PSYCHOSEXUAL EVALUATION.

By the time of the jurisdictional review hearing about eight months later in August 2018, Guzman had not undergone a new PSE or a polygraph. For this reason, the court declined to consider probation and instead relinquished jurisdiction:

> I am going to relinquish jurisdiction . . . and the reason for that is when I sent you on this retained--period of retained jurisdiction . . . I had a report . . . indicating that you were a moderate risk of sexual recidivism. To me that's entirely too

2

high, and I was hoping that when you came back that you would have a new assessment of your risk, and I don't see that.

You did a good rider, but my order says I will not consider probation at the end of the period of retained jurisdiction without a new full disclosure polygraph, new psychosexual evaluation, and really what I'm looking for is the evaluation, see if that risk had been reduced over the course of the work that you did over the last eight months . . . .

Further, the district court rejected Guzman's request for the court to delay its final decision on probation until Guzman obtained a PSE and a polygraph despite that the period of retained jurisdiction did not expire until December 2018. *See* I.C. § 19-2601(4) ("The court may retain jurisdiction over the prisoner for a period of up to the first three hundred sixty-five (365) days."). Referring to the court's sentencing order, the court stated: "[H]ere's what's in my order: That I won't consider probation at the end of the period of retained jurisdiction without a new full disclosure polygraph and a new psychosexual evaluation. We're here for your retained jurisdiction review hearing. I don't have those." Following the jurisdictional review hearing, the court entered a written order relinquishing jurisdiction and imposing Guzman's sentence.

Guzman timely appeals.

## II.

## ANALYSIS

### A.    Order Relinquishing Jurisdiction

Guzman argues the district court abused its discretion by relinquishing jurisdiction and not placing him on probation. "At the end of the period of retained jurisdiction, the court may suspend the sentence and place the defendant on probation, or may relinquish jurisdiction, allowing execution of the original sentence." *State v. Lutes*, 141 Idaho 911, 915, 120 P.3d 299, 303 (Ct. App. 2005). The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

3

Guzman argues the district court's order relinquishing jurisdiction violated his Fifth Amendment rights based on his failure to obtain a PSE and a polygraph. He contends the court's requirement that he obtain a PSE and a polygraph subjected him to a "classic penalty situation" in which a defendant must choose between being punished either for invoking his Fifth Amendment privilege or for making incriminating statements. *See Minnesota v. Murphy*, 465 U.S. 420, 435-36 (1984) (recognizing "classic penalty situation" violates Fifth Amendment). This Court, however, will not address constitutional issues if the case can be decided on other grounds. *State v. Le Veque*, 164 Idaho 110, 115, 426 P.3d 461, 466 (2018); *see also State v. Smith*, 161 Idaho 782, 785, 391 P.3d 1252, 1255 (2017) (holding the Supreme Court will not address constitutional issues when a case can be decided upon other grounds). We conclude this case can be decided on nonconstitutional grounds.

The Idaho Supreme Court's decision in *Le Veque* is dispositive of Guzman's appeal. In that case, Le Veque pled guilty to burglary and possession of a controlled substance, and the district court placed him on probation. *Id.* at 112, 426 P.3d at 463. The Department of Correction (Department) reviewed Le Veque's criminal history, learned he had a sex offense conviction in South Dakota, and placed Le Veque in a sex offender treatment program. *Id.* Le Veque violated his probation, including by engaging in an unapproved sexual relationship and being terminated from the sex offender treatment program for failing to take responsibility for his prior sex crime. *Id.* As a result of these and other violations, the district court revoked Le Veque's probation and retained jurisdiction. *Id.* In the order retaining jurisdiction, the district court recommended sex offender treatment and a polygraph:

> THE COURT SPECIFICALLY RECOMMENDS SEX OFFENDER <u>TREATMENT</u> AFTER HE FULLY DISCLOSES HIS INVOLVEMENT IN HIS SOUTH DAKOTA CRIME, AND THAT HIS DISCLOSURE IS VERIFIED WITH A POLYGRAPH.

*Id.* During his rider, Le Veque completed a substance abuse program, but the Department did not place Le Veque in a sex offender treatment program. *Id.* at 113, 426 P.3d at 464. At the jurisdictional review hearing, the district court relinquished jurisdiction, noting that Le Veque had not completed a polygraph as ordered and that he could have but did not arrange for a polygraph. *Id.* Le Veque requested more time to obtain a polygraph, but the district court denied the request and relinquished jurisdiction. *Id.*

On appeal, the Idaho Supreme Court in *Le Veque* determined the district court's decision was not reached by an exercise of reason. *Id.* at 115, 426 P.3d at 466. The Court noted that

4

courts are empowered to adjudge any person who willfully disobeys a specific and definite order but that only punishment "for disobedience to specific and definite orders accords with notions of fairness and due process." *Id.* at 116, 426 P.3d at 467. The Court reviewed the district court's order recommending that Le Veque obtain a polygraph and concluded the order did not have "the specificity and definition needed to be considered an order directing Le Veque to obtain a polygraph examination." *Id.* The Court ruled that the order was ambiguous because it did not state Le Veque "shall" or "must" obtain a polygraph but rather only "recommended" a polygraph. *Id.* Further, the Court ruled that it was unclear who the subject of the recommendation was--the Department or Le Veque. *Id.* As a result, the Court held that "the district court abused its discretion when it relinquished jurisdiction over Le Veque solely because he failed to follow an ambiguous recommendation." *Id*. at 117, 426 P.3d at 468.

The district court's order retaining jurisdiction over Guzman in this case contains the same defect as the order that the Idaho Supreme Court addressed in *Le Veque*. As in *Le Veque*, the order in this case simply "recommends" a PSE and does not order it. Further, to whom the court directed its recommendation to obtain a new PSE--either the Department or conversely Guzman--is unclear. Although the court's order is somewhat more definitive than the *Le Veque* order in that the court states it will not consider probation at the end of the period of retained jurisdiction without a new PSE and polygraph, the order is ambiguous--just as in *Le Veque*--regarding who must order, require, or otherwise obtain the PSE.

Idaho law does not contain any provision for a defendant, like Guzman, to command or to compel a PSE while incarcerated, including during a period of retained jurisdiction. Instead, the statutory provisions governing PSEs only provide that the court or other entities with authority over a defendant may order or require a PSE. Idaho Code § 18-8316 expressly provides that "if ordered by *the court*," then the court may consider a PSE "prior to sentencing and incarceration or release on probation." (Emphasis added.) Similarly, I.C. § 18-8314 empowers the sexual offender management board with the authority to establish qualifications for professionals providing sexual offender treatment and conducting post-conviction polygraphs "as ordered or required by the court, Idaho department of correction or Idaho commission of pardons and parole." I.C. § 18-314(2)(ii), (iii). Further, I.C. § 19-2601 provides that "during the period of retained jurisdiction, the state board of correction shall be responsible for determining the placement of the prisoner and such education, programming and treatment as it determines to be appropriate." I.C. § 19-2601(4).

5

These authorities, coupled with the fact that no authority provides a defendant may order or otherwise require a PSE while incarcerated, give rise to an inherent ambiguity in the court's order recommending a PSE. Based on these authorities, a reasonable interpretation of the court's recommendation for a PSE is either that the court, which is requiring the PSE, will order that PSE as provided by I.C. § 18-8316, or alternatively, that the court is recommending the Department to require the PSE, which the Department has the authority to do. As the Idaho Supreme Court noted in *Le Veque,* "[c]ertainly, the Department could have understood that the recommendation was addressed to it, rather than being a direct order to Le Veque." *Id.* at 116, 426 P.3d at 467.

The court's statements during the jurisdictional review hearing, however, establish that the court's ambiguous order intended neither of the reasonable interpretations based on the legal authorities but, instead, expected that Guzman himself would arrange for and obtain a PSE while incarcerated and in adequate time for the court's consideration before the jurisdictional review hearing. Meanwhile, Guzman did not understand the court's unarticulated directive until the jurisdictional review hearing. Indeed, that Guzman willingly obtained a PSE himself after the hearing establishes he did not understand the court's ambiguous directive until that hearing. To avoid this confusion, the court should have definitively stated in its written order that the court was directly ordering Guzman personally to arrange for the PSE before the conclusion of the period of retained jurisdiction and in time for the court's consideration at the jurisdictional review hearing.[1]

The State attempts to distinguish *Le Veque* by arguing the district court relinquished jurisdiction based on the nature of Guzman's crime and the risk assessment in his original PSE and not solely because Guzman failed to obtain a new PSE and a polygraph. While we agree that during the jurisdictional review hearing the court briefly mentioned Guzman's crime and prior risk assessment, we are not persuaded by the State's argument. During the hearing, the court stated twice that its reason for relinquishing jurisdiction was Guzman's failure to obtain a new PSE and a polygraph, including by stating at the conclusion of the hearing that "[h]ere's

---

[1]     This explanation of how the district court could have avoided the inherent ambiguity in its order should not be interpreted or otherwise construed as a suggestion that, if the court were to enter an unambiguous order directing a defendant to provide for a PSE, then that direct order somehow deprives the defendant of his Fifth Amendment right to object to a PSE. Addressing Guzman's Fifth Amendment argument is unnecessary because *Le Veque* resolves this case. Resolution of the issue the court's ambiguous order created turns on who must provide for the PSE not whether the defendant must submit to the PSE despite his Fifth Amendment rights.

6

what's in my order: That I won't consider probation at the end of the period of retained jurisdiction without a new full disclosure polygraph and a new psychosexual evaluation." If the court intended only to relinquish jurisdiction based on the nature of Guzman's crime and his original PSE risk assessment, then the court could have done so without twice stating it was relinquishing jurisdiction based on the absence of a new PSE and polygraph. *See State v. Komen*, 160 Idaho 534, 540, 376 P.3d 738, 744 (2016) (noting court could have elected to relinquish jurisdiction based on Defendant's prior history and not for lack of polygraph test). Accordingly, we hold that the district court abused its discretion, just as in *Le Veque*, because its decision to relinquish jurisdiction punished Guzman for his failure to comply with an ambiguous recommendation and, thus, was not reached by an exercise of reason. *See Le Veque*, 164 Idaho at 115, 426 P.3d at 466 (ruling court's decision based on ambiguous recommendation not reached by exercise of reason).

**B.  Missing Record**

On appeal, Guzman also argues the district court violated his due process rights by failing to preserve a sufficient record for appeal. Specifically, Guzman claims the district court failed to preserve for the appellate record five letters of support submitted in Guzman's favor. Guzman filed a motion with the Idaho Supreme Court to augment the appellate record to include these letters, which he attached to his motion. The Court initially granted Guzman's motion but then later denied the motion after the Kootenai County District Court Clerk notified the Court it was unable to locate the letters and had shredded Guzman's case file. A defendant's due process rights are violated "when there is such a breakdown in the application of established procedures" that the record is not adequately preserved for appeal. *Ebersole v. State,* 91 Idaho 630, 636, 428 P.2d 947, 953 (1967). Accordingly, Guzman shall be allowed to resubmit letters of support on remand.

### III.

### CONCLUSION

We hold that the district court abused its discretion by relinquishing jurisdiction in this case. We vacate the court's order relinquishing jurisdiction and remand the case for a determination by a different district court judge whether Guzman's sentence should be suspended and he should be placed on probation.[2]

---

[2]      We note that the district court entered its order recommending a PSE and a polygraph in this case approximately three weeks *before* the Idaho Supreme Court issued its decision in

7

Chief Judge HUSKEY **CONCURS.**

Judge LORELLO, **DISSENTING**

I respectfully dissent because I think there are important differences between this case and *State v. Le Veque*, 164 Idaho 110, 426 P.3d 461 (2018) which compel a different result.

The defendant in *Le Veque* was placed on probation following his guilty pleas to burglary and possession of a controlled substance. *Id.* at 112, 426 P.3d at 463. Despite the nature of his convictions, the Idaho Department of Correction (Department) placed Le Veque on sex-offender probation because a review of his criminal history revealed a prior sex-offense conviction from South Dakota. Le Veque was subsequently found in violation of probationary terms related to being sex offender. Those violations included engaging in an unapproved sexual relationship, failing to provide truthful information on a polygraph examination, and being terminated from a sex-offender treatment program. Based on those violations, the district court revoked Le Veque's probation, ordered his sentences executed, and retained jurisdiction. The district court's order retaining jurisdiction include the following statement: "THE COURT SPECIFICALLY RECOMMENDS SEX OFFENDER <u>TREATMENT</u> AFTER HE FULLY DISCLOSES HIS INVOLVEMENT IN HIS SOUTH DAKOTA CRIME, AND THAT HIS DISCLOSURE IS VERIFIED WITH A POLYGRAPH." *Id.* The Department did not, however, follow the district court's recommendation. Instead, Le Veque was placed in a substance abuse program. *Id.* at 112-13, 426 P.3d at 463-64.

At Le Veque's retained jurisdiction review hearing, the district court relinquished jurisdiction. While acknowledging that the Department had authority to determine programming during the period of retained jurisdiction, the district court indicated it relinquished jurisdiction because Le Veque did not obtain the polygraph the district court recommended in its order retaining jurisdiction. The district court advised Le Veque that he could have arranged for the polygraph, but did not. *Id.* at 113, 426 P.3d at 464. When Le Veque inquired if the district court would allow additional time to accommodate the polygraph, the district court declined. *Id.*

---

*Le Veque* and that the court did not have the benefit of the *Le Veque* decision when relinquishing jurisdiction in this case. Nevertheless, the appellate courts have already addressed several appeals challenging similar orders by this particular district court regarding PSEs and polygraphs and have vacated those orders. For this reason, we remand to a different district court.

8

Le Veque appealed the district court's order relinquishing jurisdiction arguing, in relevant part, that the district court "violated his Fifth Amendment rights by relinquishing jurisdiction solely because he had not taken a court-ordered polygraph examination." *Id.* at 114-15, 426 P.3d at 465-66. The Court avoided the constitutional question presented by Le Veque and instead evaluated whether the district court abused its discretion by relinquishing jurisdiction. In framing the question this way, the Court noted that the district court "relinquished jurisdiction over Le Veque because Le Veque did not comply with what the district court viewed as an order to Le Veque to obtain a polygraph examination." *Id.* at 115, 426 P.3d at 466. Framed this way, the Court considered whether the "order" to "obtain a polygraph examination" was sufficiently specific and definite to be enforceable. *Id.* at 115-16, 426 P.3d at 466-67. The Court held that the "order" was not an order because it lacked "the specificity and definition needed to be considered an order directing Le Veque to obtain a polygraph examination." *Id.* at 116, 426 P.3d at 467. More specifically, the Court held that the district court's language was ambiguous because it made a recommendation and "did not use a term like 'shall' or 'must' that would have made the district court's desires unambiguous commands." *Id.* The Court also noted that, even if the district court would have couched its recommendation as a command, "it is unclear who the subject of the recommendation is." *Id.* Thus, the Court concluded that "relinquishing jurisdiction over Le Veque because he failed to follow an ambiguous recommendation--rather than a specific and definite order--was not a decision reached through an exercise of reason." *Id.*

In my view, the challenged language in the district court's order retaining jurisdiction in Guzman's case does not require us to consider whether it was a valid and enforceable order because it is not an order--it is a statement of the district court's view of whether Guzman would be eligible for probation following the period of retained jurisdiction. The challenged language reads: "THE COURT WILL NOT CONSIDER PROBATION AT THE END OF THE PERIOD OF RETAINED JURISDICTION WITHOUT A NEW FULL-DISCLOSURE POLYGRAPH AND NEW PSYCHOSEXUAL EVALUATION."[1] The district court expressed the same view at sentencing:

---

[1] This language followed the statement, set forth in a separate paragraph, that reads: "THE COURT RECOMMENDS for the defendant SEX OFFENDER ASSESSMENT AND TREATMENT, WITH AN OPINION AT THE END OF THAT ASSESSMENT AND TREATMENT AS TO HIS RISK TO REOFFEND." While this language reflects a recommendation, as did the challenged language in *Le Veque*, I do not think the recommendation for sex-offender treatment renders the subsequent paragraph regarding

9

> [Court]:        I won't consider probation a year from now when you come back if you don't have a full disclosure polygraph and another complete sex-offender assessment, and one that indicates that you're at the low end of risk to reoffend in a sexual way.
>
> . . . .
>
> . . . Do not be surprised when you come back if I impose your prison sentence, and I guarantee you I will impose your prison sentence if you don't come back here with a new psychosexual evaluation, verified by a full disclosure polygraph that comments on the reasons why you did this horrible act over time, on a repeated basis . . . . If you fail in any of those regards, I will not put you on probation . . . . Do you understand that?
>
> [Guzman]:       Yes, Your Honor.

It is not at all uncommon or inappropriate for district courts to express such expectations at the time of sentencing. Nor is it uncommon or inappropriate for a district court to follow through on its stated expectations when making subsequent sentencing decisions such as relinquishing jurisdiction (or not) or revoking probation. That is precisely what the district court did in this case. Consistent with what the district court said at sentencing, as memorialized in its order retaining jurisdiction, the district court relinquished jurisdiction and declined to place Guzman on probation because it did not have the information it told Guzman would be necessary in order to do so--an updated psychosexual evaluation and polygraph examination indicating that Guzman was a lower risk than originally assessed. I cannot conclude that the district court failed to exercise reason when it decided to relinquish jurisdiction by adhering to its previously stated expectations regarding probation. To the contrary, the district court's reasoning and its reason for relinquishing jurisdiction were well within its discretion. *See State v. Flores*, 162 Idaho 298, 230, 396 P.3d 1180, 1182 (2017) (stating well-established proposition that the decision whether to place a defendant on probation or relinquish jurisdiction is committed to the discretion of the sentencing court); *State v. Steelsmith*, 153 Idaho 577, 583-84, 288 P.3d 132, 138-39 (Ct. App. 2012) (affirming order relinquishing jurisdiction in part due to the defendant's high risk to reoffend). Accordingly, I would reject Guzman's challenge based on *Le Veque* and address the merits of Guzman's alternative Fifth Amendment claim, which I would also reject for the following reasons.

---

probation a recommendation or an order, much less an ambiguous one. Indeed, nowhere in the paragraph regarding probation does the district court use the word "recommend."

10

Guzman argues that conditioning probation on a new psychosexual evaluation and full disclosure polygraph violated his Fifth Amendment rights because it forced him into a classic penalty situation requiring him to choose between being punished for his silence or incriminating himself. No such choice was forced upon Guzman.

After pleading guilty to lewd conduct, Guzman voluntarily submitted to a psychosexual evaluation and polygraph examination and expressly waived his Fifth Amendment rights as to both.[2] The psychosexual evaluator found Guzman "to be at average or moderate risk of sexual recidivism;" concluded Guzman had limited awareness or insight into the potential harm or impact on victims of sexual abuse; and stated that, if Guzman were to reoffend, the "most likely victim would be an early to mid-teen female." Guzman submitted and relied on the evaluation and examination for consideration at sentencing. At sentencing, Guzman's risk was central to the district court's disposition:

> I am going to commit you today to the Board of Correction. I'm not going to consider probation. I will retain jurisdiction for up to a year, and I'll explain in detail my reasons for that.[3]
>
> I won't consideration probation a year from now when you come back if you don't have a full-disclosure polygraph and another complete sex-offender assessment, and one that indicates that you're at the low end of risk to reoffend in a sexual way. Right now I don't have an evaluation that's in that ballpark. You're at an unacceptable risk for me as a judge to put you back out in the community, so probation's not even an option right now, and it might not be an option when you come back, and again I'll talk some more about that here in a

---

[2] Psychosexual evaluations are commonly combined with a polygraph examination as was done in this case. This combination is consistent with Idaho laws and regulations governing the management of sex offenders like Guzman. *See* I.C. § 18-8312(3)(j) (requiring the sex-offender management board to include an individual with "expertise in postconviction sexual offender polygraph examination"); I.C. § 18-8314 (requiring sex-offender management board to "develop, advance and oversee sound sexual offender management policies and practices statewide" including standards for psychosexual evaluations and qualifications for "[p]rofessionals conducting postconviction sexual-offender polygraphs as ordered or required by the court, Idaho department of correction or Idaho commission of pardons and parole"); IDAPA 06.02.01 (setting forth polygraph requirements for sex-offender supervision and classification within the Department); Idaho Sexual Offender Management Board, *Adult Psychosexual Evaluations and Evaluator Certification Standards* (noting polygraph examinations are a discretionary evaluation tool that may be used as part of a psychosexual evaluation) https://somb.idaho.gov/wp-content/uploads/2018/10/Adult-Psychosexual-Evaluations-and-Evaluator-Certification-Standards-2020-1.pdf (last visited June 12, 2020).

[3] Guzman requested probation or, alternatively, retained jurisdiction. The State requested imposition of a unified fifteen-year sentence, with five years fixed.

minute, but I need an assessment sometime in the future that indicates that you're at a low risk to reoffend and the reasons why.

The district court's closing comments were similar:

> . . . I think in an ordinary situation I would not consider a retained jurisdiction or a rider.
>
> I am willing to give this a try. I don't want you to hold out an inordinate amount of hope. Do not be surprised when you come back if I impose your prison sentence if you don't come back here with a new psychosexual evaluation, verified by a full disclosure polygraph that comments on the reasons why you did this horrible act over time, on a repeated basis, and I'm going to need exact details of what you did in the next year by way of programming that explains to me why you're now, sometime in the future, an acceptable risk to be placed on probation. If you fail in any of those regards, I will not put you on probation, and I will impose your prison sentence.

Given that Guzman waived his Fifth Amendment rights vis-à-vis the psychosexual evaluation and polygraph examination and specifically submitted those items for consideration at sentencing, his Fifth Amendment rights were not implicated at that time. Thus, Guzman's claim can only be that he later changed his mind regarding the relevance of that information and, upon changing his mind (without advising the court of such), he was forced to choose between getting an updated psychosexual evaluation and polygraph or being punished for his refusal to subject himself to the exact same evaluative tools he submitted at sentencing. This claim is foreclosed by *State v. Jiminez*, 160 Idaho 540, 376 P.3d 744 (2016).

In *Jiminez*, the defendant pled guilty to sexual battery of a child. *Id.* at 542, 376 P.3d at 746. The district court ordered Jiminez to have a psychosexual evaluation, which included a polygraph examination, and informed Jiminez that he had a Fifth Amendment right to refuse to answer any questions during that evaluation; Jiminez exercised that right. At sentencing, the district court noted that, without an assessment, it had limited information regarding Jiminez's risk and had to assume, based on the facts of the case, that the risk was significant. On appeal, Jiminez argued that the district court violated his Fifth Amendment right by drawing adverse inferences from his refusal to participate in the evaluation. The Idaho Supreme Court disagreed, stating:

> Commenting on the fact that without the psychosexual evaluation there was a lack of evidence regarding Defendant's amenability to treatment in the community and his corresponding risk does not constitute drawing an adverse inference from Defendant's silence. There is a difference between drawing an adverse inference and recognizing the lack of evidence. An inference is "[a] conclusion reached by considering other facts and deducing a logical consequence from them." *Black's Law Dictionary* 781 (19th ed. 2010). The record is clear that

12

the district court did not infer that Defendant was not amenable to rehabilitation and was a high risk to the community based upon his refusal to submit to a psychosexual evaluation.

*Jimenez*, 160 Idaho at 544, 376 P.3d at 748.

Similarly, the record in this case is clear that the district court did not infer that Guzman was an unacceptable risk based upon his refusal to submit to an updated psychosexual evaluation and polygraph. Rather, the district court's opinion in that regard was based on the evaluation Guzman submitted prior to sentencing. The district court properly took into consideration the only psychosexual evaluation it had and the lack of an updated psychosexual evaluation showing Guzman was a lower risk than originally assessed. *See id.* (concluding the district court could "certainly take into consideration" the lack of evidence when deciding whether to place the defendant on probation).

Guzman contends that *Jiminez* is distinguishable because in *Jiminez* the district court indicated the defendant's decision not to participate in a psychosexual evaluation "played no factor" in its sentence whereas the district court's decision in this case "was expressly based on the fact that Mr. Guzman had not spoken as the district court wanted him to." Guzman's word choice, including the words he has omitted from *Jiminez*, are telling. The full quote from *Jiminez* reads:

> The court is very aware that you have no record. I'm not sure what to make of that without a psychosexual evaluation or the polygraph. I could assume that that means that you've just never broken the law in your entire life, or I could assume that you've never been caught; sometimes it's somewhere in between. I do note some of the most dangerous criminals are the ones that are good enough to get away with it. But, again, I just don't have any evidence there to give me confidence of what conclusions I should a [sic] draw from that. I can only assume, though, that the fact that you didn't participate must mean there's some information you don't want me to know about. I wouldn't hold that against you at a trial, that would be wrong because you have a right to remain silent at your trial and you do have a right to remain silent here now, too. But generally if there is something that you didn't want me to know, I can only assume there is a good reason you didn't want me to know it. *But, again, those things really played no factor in my sentence. I just have to deal with the case as what it is, and not what it's not, and my discussion is based on the information I do have.*

*Jiminez*, 160 Idaho at 543, 376 P.3d at 747.

"[T]hose things" that "played no factor" in the district court's sentence in *Jiminez* were related to "things" the district court presumed about why Jiminez chose not to participate in an

evaluation. But, the absence of information regarding Jiminez's risk other than what was already available to the district court did play a role, just as it did in Guzman's case.[4] And properly so.

Even if *Jiminez* did not foreclose Guzman's claim, it is also foreclosed by other Fifth Amendment principles. The Fifth Amendment "speaks of compulsion." *United States v. Monia*, 317 U.S. 424, 427 (1943). The Fifth Amendment does not preclude an individual from voluntarily speaking even on matters that may incriminate the individual. *Id.* Because an individual may do so, he is ordinarily required to invoke the Fifth Amendment privilege if he desires to be protected by it. *Id.* Otherwise, any incriminating statements made will not be considered compelled. *Id.* Not even a "general obligation to appear" and "answer questions truthfully" will "convert [an individual's] otherwise voluntary statements into compelled ones." *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). A statement is only "compelled within the meaning of the Fifth Amendment" when the individual is "required to answer over his valid claim of the privilege." *Id.* An individual may, however, be excused from asserting a valid claim of privilege in circumstances where the Fifth Amendment's compulsion requirement is satisfied due to some coercive circumstance. *See id.* at 429 (noting that a choice to answer an incriminating question is considered voluntary if the individual is free to claim the privilege without suffering a penalty as a result). This has been referred to as a classic penalty situation. To constitute a classic penalty situation, the individual must be faced with either an express or implied assertion that invocation of the privilege will lead to a substantial penalty in which case the answers would be deemed compelled and could not be used against the individual who made the statements. *Id.* at 434-35.

It is difficult to understand how there was any element of compulsion in this case. Guzman has not explained why, despite his presentencing waiver, that the district court should have assumed, or this Court should now assume,[5] that he wanted to invoke his Fifth Amendment

---

[4]    Guzman also argues that the district court "conspicuously ignore[d]" updated information regarding risk as provided in the amended presentence investigation report (APSI). Specifically, the APSI indicated Guzman's "risk to reoffend is statistically in the low risk range." This statement appears to reflect Guzman's risk as measured by the LSI, not a risk assessment based on a psychosexual evaluation. Regardless of what tool was used for the "low risk" language in the APSI, it is irrelevant to Guzman's Fifth Amendment claim given that the claim centers on the *absence* of an evaluation.

[5]    Because Guzman's Fifth Amendment claim has been raised for the first time on appeal, the State asserts that the fundamental error standard applies. *See State v. Kerr*, 163 Idaho 656, 658, 417 P.3d 982, 984 (Ct. App. 2018) (applying fundamental error standard to Fifth

14

rights after sentencing but did not because he felt faced with a classic penalty situation. At no time did Guzman suggest as much even though he could have done so at the retained jurisdiction hearing. Instead, Guzman requested additional time to obtain a new psychosexual evaluation before the district court decided whether to relinquish jurisdiction. Although the district court declined Guzman's request to continue the retained jurisdiction review hearing for this purpose, the district court advised Guzman that it would consider a new evaluation as part of an I.C.R. 35 motion. Rather than providing any indication that he thought his Fifth Amendment rights were being violated, Guzman obtained a new psychosexual evaluation and polygraph and filed them in support of a Rule 35 motion, which the district court granted by reducing Guzman's sentence. I see nothing in these circumstances that resemble compulsion.

It is also difficult to understand how any statements Guzman made during the second psychosexual evaluation and polygraph examination were used against him.[6] The second evaluation was performed by the same evaluator who conducted the first evaluation (at Guzman's request), the format of the evaluation was the same, and much of the content is identical. The second polygraph was also performed by the same polygrapher and netted the same finding as the first polygraph--Guzman was truthful in his responses. The important change that occurred from the first psychosexual evaluation and polygraph to the second was Guzman's assessed risk, which *improved*. Guzman went from an "average or moderate risk of sexual recidivism" to a "low-moderate risk of sexual recidivism." The evaluator specifically noted Guzman "appear[ed] to have benefitted from sex offender classes or treatment at NICI." Guzman relied on that improvement to benefit him in the form of a reduced sentence. Guzman has failed to identify any statement from the second psychosexual evaluation and polygraph examination that was used against him.

---

Amendment violation arising from statement defendant made during presentence investigation raised for the first time on appeal). However, neither this Court nor the Idaho Supreme Court has previously decided the applicable standard in this precise context. Regardless, because Guzman cannot show a Fifth Amendment violation, his claim fails under any standard.

[6]    Guzman's claim focuses on the compulsion element of the Fifth Amendment and his contention that he was compelled to participate in the second evaluation. However, compulsion alone is not enough to establish a Fifth Amendment violation. A violation only occurs if compelled statements are used against the individual who made them. *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998) ("The Fifth Amendment protects against compelled self-incrimination."); *see also Murphy*, 465 U.S. at 435 (recognizing that compelled statements are inadmissible in a criminal prosecution).

All of the cases upon which Guzman relies involved either a penalty for invoking the Fifth Amendment or a penalty following an excused failure to invoke the privilege. *See State v. Van Komen*, 160 Idaho 534, 540, 376 P.3d 738, 744 (2016) (holding constitutional violation occurred where court revoked probation due to defendant invoking Fifth Amendment right not to submit to a polygraph); *State v. Reed*, 163 Idaho 681, 686, 417 P.3d 1007, 1012 (Ct. App. 2018) (holding constitutional violation resulted from decision to relinquish jurisdiction because defendant invoked Fifth Amendment right not to take polygraph regarding sex offense unrelated to crime of conviction); *State v. Powell*, 161 Idaho 774, 781, 391 P.3d 659, 666 (Ct. App. 2017) (holding that, because defendant was placed in a classic penalty situation when he incriminated himself for purposes of parole, incriminating statements obtained during that process could not be used in separate criminal prosecution based on those statements). Because neither constitutional concern exists in Guzman's case, he has failed to establish a Fifth Amendment violation. Accordingly, I would affirm the district court's order relinquishing jurisdiction.[7]

---

[7] Even if I agreed that the district court's order relinquishing jurisdiction should be vacated and the case remanded under *Le Veque* such that this Court would be obligated to follow the remedy from that case as well (appointment of a different judge), I note that it is unclear to me why the Court in *Le Veque* adopted that remedy from *Van Komen*, 160 Idaho at 540, 376 P.3d at 744. In *Van Komen*, the Court required appointment of a new judge on remand "[b]ecause the district court clearly violated Defendant's right against self-incrimination in seeking to force him to incriminate himself." *Id.* The Court also stated: "The court's action in this case appeared vindictive because of Defendant's refusal to incriminate himself." *Id.* Although the Court in *Le Veque* applied the *Van Komen* remedy it did not find a constitutional violation nor did it find the district court was vindictive; instead, the Court in *Le Veque* concluded the district court abused its discretion by relinquishing jurisdiction "solely because [the defendant] failed to follow an ambiguous recommendation." *Le Veque*, 164 Idaho at 117, 426 P.3d at 468. Perhaps the Court in *Le Veque* intended to imply vindictiveness by citing to *Van Komen* when stating a different judge should be assigned on remand. *Le Veque*, 164 Idaho at 117, 426 P.3d at 468. In any event, in my view, there should be a clear standard and a high threshold for remanding to a different judge. Whatever the standard, I do not think the district court's actions in this case were vindictive, particularly in light of the Rule 35 reduction and Guzman's acknowledgment at the Rule 35 hearing that he was *not* ready for probation.

16